IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DEMETRIUS S. RANKIN**                                                      **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO.  1:10cv278-HSO-JMR**

**UNITED STATES, et al.**                                                      **DEFENDANTS**

_____

### REPORT & RECOMMENDATIONS

This matter comes before the Court pursuant to the Defendants' Motion [50] to Dismiss, or in the alternative, for Summary Judgment and Memorandum [51] in Support thereof. The Plaintiff filed a Response [50] and Memorandum [56] in Support thereof to which the Defendants filed Reply [63]. After obtaining leave from this Court, the Plaintiff filed a Surreply [68] to the Defendants' Reply.  The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that the Motion [50] should be granted.

### STATEMENT OF THE CASE

On June 1, 2006, Demetrius Rankin, driving a truck with Texas license plates,  was stopped for a traffic violation in Pascagoula, Mississippi. As he exited his vehicle, officers took notice of what appeared to be a handgun in Rankin's waistband. The officers made an attempt to seize the handgun but Rankin resisted and was eventually taken into police custody. After searching both Rankin and his truck, the officers recovered a .22 caliber revolver, an ounce of marijuana, and

approximately one thousand dollars in cash. Rankin was taken to the Pascagoula City Jail.

At the jail, Rankin made a call to his girlfriend. He informed her of his arrest, that he had the keys to the "inside" and the "outside," and directed her to move the "outside" to another location. Unbeknownst to Rankin, the call was monitored by police who then turned the information over to a FBI Task Force. That same day, a member of the task force, Sergeant Nicholson, obtained a search warrant for Rankin's residence. The warrant was executed by task force members Nicholson, Gaffney, and Massey. The search resulted in the seizure of 9.4 kilograms of cocaine hydrochloride, eight kilograms of which was found locked in an outside trailer that Rankin held the keys to, marijuana, and other drug paraphernalia. The officers seized the drugs, $20,490 in cash retrieved from his girlfriend's purse as she was fleeing the property, a motorcycle, a truck, an SUV, the trailer, and various home electronics.

A federal warrant was issued for Rankin and on June 6, 2006, he appeared for a preliminary and detention hearing and was ordered to be held without bond. Over two weeks later, a federal grand jury returned a three count indictment against Rankin. In Count One and Two, it charged Rankin with conspiracy to posses with intent to distribute and possession with intent to distribute five kilograms or more of a substance containing cocaine hydrochloride, respectively. Count Three sought criminal forfeiture. A bill of particulars was later filed detailing the property to be forfeited under Count 3. On September 19, 2006, Rankin entered a guilty plea on Counts Two and Three pursuant to a written plea agreement. He was sentenced to 143 months of imprisonment followed by a five-year period of supervised release on April 17, 2007.

During this time, administrative forfeiture proceedings were commenced against Rankin for the property seized. On July 10 and 11, 2006, Rankin received notifications that the government was seeking forfeiture of the $1,200 and $20,490 in cash, a motorcycle, a truck, a SUV, and

miscellaneous items that included a trailer, generator, televisions, and a home computer. These items were declared forfeited through a series of findings from October 31, 2006 through March 19, 2007.

In April of 2008, Rankin filed a motion pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure seeking the return of the forfeited property. Because the property had been administratively forfeited, the government filed a motion to dismiss the property from the indictment. The motion was granted, the property was dismissed, and Rankin's motion was dismissed as moot. Rankin then appealed to the Fifth Circuit where he was again denied by written opinion on December 14, 2010.

Rankin commenced the instant matter by filing a complaint on November 9, 2009, seeking damages for the government's conduct in forfeiting the property under the Federal Torts Claim Act ("FTCA") and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

## STANDARD OF REVIEW

### *Motion to Dismiss*

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. As courts of limited jurisdiction, federal courts have subject matter jurisdiction only over those matters specifically designated by the United States Constitution or Congress. See *Johnson v. United States*, 460 F.3d 616, 621 n. 6 (5th Cir.2006). The existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised *sua sponte* by the district court on its own motion. *See Nguyen v. District Director, Bureau of Immigration*, 400 F.3d 255, 260 (5th Cir.2005); see also *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A 1981) (stating that "where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal court poaches upon the territory of a coordinate judicial system, and its

decisions, opinions, and orders are of no effect").

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder. com, Inc.*, 402 F.3d 489, 494 (5th Cir.2005). When considering whether subject matter jurisdiction exists, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.* As the party seeking federal court review, the plaintiff bears the burden of demonstrating that jurisdiction is proper. See *Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir.2000) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998)).

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir. 1996). Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 164 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'"*Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420-421 (5th Cir. 2006)(quoting 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civ. 2d § 1216 at 156-159 (footnote omitted)). The Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

Ordinarily, the Court may not look beyond the pleadings in ruling on a 12(b)(6) motion. *Baker*, 75 F.3d at 196. However, in evaluating a motion which challenges the adequacy of a complaint under 12(b)(6) in a prisoner's *pro se* suit, this Court may look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983). Furthermore, the Fifth Circuit has stated:

> [I]t is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.... *Pro se* prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief.

*Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989)(quoting *Taylor v. Gibson*, 529 F.2d 709, 713-714 (5th Cir. 1976)).

To survive a motion to dismiss, plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculation level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Recently, the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: one, a court must apply the presumption of truthfulness only to factual matters, and not to legal

conclusions; and two, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

### *Motion for Summary Judgment*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant

probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

### III. ANALYSIS

### FTCA Claims

#### *Seizure of Property Claim*

In the first of his claims under the FTCA, Rankin seeks relief for the seizure of his property by Defendants Nicholson, Massey, and Gaffney on June 1, 2006. Rankin claims that the agents acted negligently in performing their search and seizing items outside the scope of the warrant. The government argues that Rankin's claim is barred by § 2680(c)'s exception to the FTCA waiver of sovereign immunity and therefore this Court lacks jurisdiction over the claim.

Under the principle of sovereign immunity, "it is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Absent a waiver, the federal government is shielded by its sovereign immunity from suit. *Department of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999). Waivers of sovereign immunity must be unequivocally expressed, they cannot be implied. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). Any expression of consent "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *Id.* at 34. The strict interpretation of a waiver of immunity "define[s] [a] court's jurisdiction to entertain the suit." *FDIC v. Meyer,* 510 U.S. 471, 475 (1994). As a result, where the federal government is itself sued, "the available remedies are not those that are 'appropriate,' but only for those which sovereign immunity has been expressly waived." *Lane v. Pena*, 518 U.S. 187, 196 (1996). The Federal Torts Claim Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), is a waiver

of sovereign immunity for "claims against the Unites States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment . . . ."

The FTCA's waiver of sovereign immunity is riddled with conditions and exceptions that a plaintiff must meet or overcome for a court to exercise jurisdiction. Section 2680(c) of the FTCA is one such exception; this section exempts claims arising form the "detention of any goods, merchandise, or other property . . . by any law enforcement officer" from the FTCA waiver. 28 U.S.C. § 2680(c). However, this exception has its own exception. In 2000, Congress passed of the Civil Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-105, 114 Stat. 202, that re-waived immunity for claims arising from detention of goods or property when seized by the federal officials for forfeiture purposes. 28 U.S.C. §2680(c)(1-4). Under this narrow exception, suit could be brought if:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

*Id.* Rankin argues that this exception applies to his claim for the illegal search and seizure of his property, and his suit should proceed.

Rankin argues that his claim satisfies § 2680(c)(1) because the seizure of his property was for forfeiture purposes only. He points to the forfeiture language in the warrant and the July 2006 forfeiture notification letters in support of his position. The government counters that the exception

only applies to seizures solely for the purpose of forfeiture. It argues that because the officers undoubtedly had legitimate criminal investigation in mind when they executed the warrant, the later forfeiture is not enough to bring their conduct within the statutory waiver. This Court recognizes that the parameters of "for the purpose of forfeiture" are subject to dispute.

There is debate as to whether the statutory language covers only seizures solely for the purposes of forfeiture or also those made through a criminal investigation that also serves as a basis for forfeiture. Though Fifth Circuit has yet to formally interpret the language, the Ninth and Third Circuits, the only to confront the issue, have embraced a narrow reading that applies the exception only if the property was seized solely for the purposes of forfeiture, "even if the government had in mind, and later pursued, judicial forfeiture of property seized initially for a legitimate criminal investigative purpose." *Foster v. United States*, 522 F.2d 1071, 1079 (9th Cir. 2008) ("[W]e ultimately must apply the general rule that waivers of sovereign immunity are construed in favor of the sovereign and must interpret any ambiguity in the scope of CAFRA's rewaiver of sovereign immunity in favor of the United States."); *Bowens v. United States Dept. of Justice*, 415 Fed. Appx. 340, 343 (3rd Cir. 2011) (citing *Foster,* 522 F.2d at 1075) (holding that 2680(c) "applies only to property seized solely for the purpose of forfeiture.").

Here, the Court does not need to interpret the reach of § 2680(c)(1) because Rankin cannot satisfy the other prerequisites of the exception. Section 2680(c)(4) requires that "the claimant was not convicted for a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." In his guilty plea, Rankin pled guilty to a criminal drug charge under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 that serves as a ground for forfeiture under 21 U.S.C. § 853. He also pled guilty to Count Three that sought forfeiture under § 853. Rankin argues that the plea agreement exercised between he and the United States reserved his

rights to the property in question and therefore he meets this requirement. Whether the plea agreement reinstated his rights to the property or not, it is undisputed that Rankin pled guilty to a drug charge that renders the property "subject to forfeiture" under 21 U.S.C. § 853. Thus, he cannot meet all four criteria of § 2680(c)(1-4) and his claim is barred by the doctrine of sovereign immunity. *See Pearson v. United States*, 373 Fed. Appx. 622, 624 (7th Cir. 2010) (Holding that a prisoner failed to meet the requirement of § 2680(c)(4) because of a guilty plea to an indictment that included one charge of drug conspiracy and one charge under 21 U.S.C. § 853); *Adeleke v. United States*, 355 F.3d 144, 154 (2nd Cir. 2004) (Conviction of heroin smuggling served as ground for seizure under 21 U.S.C. § 853 therefore plaintiff's claim is blocked by § 2680(c)(4)). Accordingly, the Court lacks subject matter jurisdiction over the claim.

### *Administrative Forfeiture Claim*

Rankin also seeks damages under the FTCA for the subsequent disposition of his property by the officials from the United States Attorneys office. The exact contours of this claim are difficult to render, but after a liberal reading of all the pleadings before the Court[1], it is evident that Rankin claims that the government broke its promise in the plea agreement to seek only criminal forfeiture. According to Rankin, when the government instead sought administrative forfeiture, it breached its mandatory duty to seek criminal forfeiture and deprived Rankin his due process rights. *See* Complaint [1] 2-3; Mem. [56] 9-10; Surreply [68] 5-6. The government argues that this claim is also barred by the "enumerated torts" exception to the FTCA.

Under § 2680(h), the United States retains its sovereign immunity in claims arising from torts such as "misrepresentation, deceit, or interference with contract rights." "To determine whether a

---

[1] "This court liberally construes briefs of pro se litigants and applies less stringent standards to their briefs, but " pro se parties must still brief the issues and reasonably comply with the standards of Rule 28." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir.1995).

claim is one 'arising out of' any of these enumerated torts, the court must focus on the conduct upon which the plaintiff's claim is based." *Truman v. United States,* 26 F.3d 592, 594 (5th Cir. 1994)(quoting 28 U.S.C. § 2680(h)). Regardless of whether a plaintiff styles a claim to avoid one of the enumerated torts in § 2680(h), the claim will be barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Id.* (quoting *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)). "Thus, the FTCA bars a claim based on conduct that constitutes a tort listed in section 2680(h), even though that conduct may also constitute another tort not listed in section 2680(h)." *Id.*

Notwithstanding the fact that the language in the plea agreement appears to allow either form of forfeiture[2], Rankin's claim fails for two basic reasons. First, the conduct alleged by Rankin supports a claim based in contract law, not in tort law that provides the basis for FTCA liability. *See Paul v. United States*, 929 F. 2d 1202, 1204 (7th Cir. 1991) ("The Tort Claims Act applies only to torts. . . . [c]laims based on the plea bargain invoke contract, not tort."). According to his own pleadings, he seeks relief for the prosecution's failure to "follow the oral and written Memorandum of Understanding, (MOU), and thereby breaching the oral and written agreement." Complaint [1] 2. Second, assuming *arguendo* that it is not a contract claim, the alleged actions of the Assistant United States Attorneys in contravening the plea agreement and seeking administrative forfeiture are "essential to and clearly encompassed by" claims for misrepresentation and deceit. *Bounds v. United States Dist. Ct.*, 2007 WL 1169377 *2 (W.D. La. 2007). Therefore, whether the claim is seen as a contract claim or a tort claim, it is barred by § 2680(h).

---

[2]" . . . and if an administrative or judicial forfeiture action is pending, to immediately, and hereby does, withdraw any opposition thereto. . . . neither this criminal action nor the plea agreement shall prevent a coincident or subsequent civil or criminal forfeiture action arising or that may arise from this matter . . ." Exhibit 2 attached Compl. [1-1] 5.

*Cooperation Claim*

Lastly, Rankin claims that the Assistant United States Attorneys failed to advise the court of the nature and extent of his cooperation as they were obligated to under the plea agreement. This claim presents the same issues as the previous. First, under the terms of the plea agreement, the United States Attorney's Office retained sole discretion of whether to present such evidence to the court.³ Yet regardless of the plea agreement's language, this is another claim that is clearly based in contract law, not tort law. Even if a tort claim can be gleaned from the pleadings, the conduct essential to Rankin's claim, like that of his administrative forfeiture claim, can fairly arise out of the torts of deceit and misrepresentation. *Id.* The Court is likewise without subject matter jurisdiction to hear this claim.

**Bivens Claims**

The claims made by Rankin pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents* can be categorized temporally: those claims arising from the search and seizure on June 1, 2006, and those arising from the subsequent administrative forfeiture of the property in 2006 and 2007.

"In *Bivens*—proceeding on the theory that a right suggests a remedy—this Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009) (quoting *Correction Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). Yet *Bivens* claims are not available for every constitutional violation by federal defendants. *See, e.g., Bush v. Lucas*, 462

---

³"Should the U.S. Attorney's Office determine that the Defendant has provided substantial assistance to law enforcement officials in an investigation or prosecution, and has fully complied with the understandings specified in this Agreement, then the government *may* submit a motion . . . requesting that the Court sentence the Defendant in light of the factors set forth . . . . The determination as to whether Defendant has provided such substantial assistance shall rest solely within the discretion of the relevant law enforcement agencies involved in conjunction with the U.s. Attorney's Office." Exhibit B attached Complaint [1-1]4.

U.S. 367 (1983). In *Wilkie v. Robbins,* 551 U.S. 537 (2007), the Supreme Court gave a two-step analysis for whether to imply a *Bivens* cause of action:

> [O]ur consideration of a *Bivens* request follows a familiar sequence, and on the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'

551 U.S. at 550.

### *Fourth Amendment Claims*

Rankin claims that Defendants Gaffney, Massey, Nicholson, and John Does violated his Fourth, Fifth, and Fourteenth Amendment rights by seizing property outside the scope of the warrant issued and executed June 1, 2006. Amend. Compl. [30] 2.[4] Amongst other defenses, the defendants argue that this claim is time-barred. This Court agrees.

When examining the timeliness of a *Bivens* claim, federal courts borrow the forum state's statute of limitations governing general personal injury claims. *Spotts v. United States*, 613 F.3d 559, 573 (5th Cir. 2010). Under Mississippi law, the statute of limitations for a *Bivens* action is three years. MISS. CODE ANN. § 15-1-49. The accrual date is guided by federal law, and is set at the date "when the plaintiff knows or has reason to know of this injury for which is the basis of the action." *Banks v. F.D.I.C.*, 374 Fed. Appx. 532, 535 (5th Cir. 2010). The government argues that Rankin knew or had reason to know of the execution of the warrant on June 13, 2006. On that date, Rankin's

---

[4]Inasmuch that any of Rankin's allegations can be fairly read to state a cause of action against Defendants Gaffney, Massey, and Nicholson for the forfeiture of his property apart from the search warrant, they are included in the Court's examination of that issue *infra*.

counsel received copies of the search warrant, the return of the search warrant that included identification of the participating officers, and an inventory of the seized property. Adopting June 13, 2006, as the trigger of the three-year period, the government reasons that any claim steming from the search and seizure was due June 13, 2009, and Rankin's complaint, filed November 9, 2009, is untimely.

     Rankin does not dispute that he was aware on June 1, 2006, that the police had executed a warrant and seized items from his home. Nor does he dispute that on June 13, 2006, his lawyer received copies of the warrant, the warrant return, and the inventory. Instead, Rankin counters with two arguments in his favor, both without merit. Franklin first argues that the actual accrual date is October 6, 2008, the date the United States filed a motion dismissing the property from the criminal indictment. Rankin's basis for this date, however, is founded upon confusion of the issues. In his amended complaint, which first raised the various *Bivens* causes of action, Rankin claims that the officers' search and seizure of items outside the scope of the warrant violated his civil rights.  On the other hand, Rankin asserts that the accrual date should be measured by when he had "reasonable inquiry notice about the purported forfeiture proceeding": the day the motion dismissing the property was filed, not the day the search and seizures occurred. Amend. Compl. [56] 15.

     The correct accrual date for this *Bivens* claim is the moment Rankin knew or had reason to know the federal officers had exceeded the bounds of the warrant executed on June 1, 2006. Franklin does not dispute that he knew of the search and had been provided copies with the warrant, the warrant return that included the officers' names, and the inventory of items seized on or before June 13, 2006. As a result, the accrual date of his claim is June 13, 2006, and his complaint was due on or before June 13, 2009. Rankin filed the his complaint on November 9, 2009, and as a result, it is time-barred.

Rankin also claims that his original filing in this matter was his motion made in the criminal proceedings on April 21, 2008, requesting return of his property under Rule 41(e) of the Federal Rules of Criminal Procedure. He argues that because of his *pro se* status, the 41(e) motion should be treated as civil action for the return of his property. That filing, he argues, was made before the running of the statute and his claim is not time-barred.

Rankin is correct in asserting that federal courts are called to construe *pro se* pleadings liberally, and Rankin's Rule 41(e) motion may have been susceptible to a reading that understood the filing as a motion for return of property under Rule 41(g). Yet it is beyond the power of a court to mold new causes of actions from a complaint want of their mention. *See Christopher v. Harbury*, 536 U.S. 403, 419 n.17 (2002)("Whatever latitude is allowed by federal notice pleading, no one says [a defendant] should be allowed to construe 'adequate legal redress' to mean causes of action that were not even mentioned in her complaint.) Rankin's rule 41 motion was a proper vehicle to request the return of seized property in a criminal matter. *See United States v. Cooper*, 231 Fed. Appx. 369 (5th Cir. 2007)(affirming the denial of a rule 41 motion seeking the return of property forfeited as a result of a conviction for conspiracy to possess with intent to distribute cocaine base). But a rule 41 may only provide for the return of property because sovereign immunity bars money damages under a rule 41 motion. *Bailey v. United States*, 508 F.3d 736 740 (5th Cir. 2007). On the other hand, a *Bivens* suit is a claim for money damages against federal officers for an alleged constitutional deprivation. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001). If a rule 41 motion is filed in a closed criminal case for the return of seized property, courts will commonly construe the motion, if at all, as a civil complaint for equitable relief (the return of property). *See, e.g., Taylor v. United States*, 483 F. 3d 385, 387 (2007) (construing a motion for return of property in closed criminal case as a civil complaint); *United States v. Robinson*, 434 F.3d 357 (5th Cir.

2005)(construing a *pro se* 41(e) motion filed in closed criminal case as a civil complaint for equitable relief). If Rankin disagrees with the District Court's consideration and disposition of his motion, he is free to seek appropriate channels of appellate relief. But this filing does not save Rankin's *Bivens* claim; the motion was filed in a closed criminal case and was not construed as a civil complaint, much less as *Bivens* cause of action.

Ultimately, Rankin filed his *Bivens* complaint on November 9, 2009, after the June 13, 2009, deadline. Therefore, this *Bivens* claim is barred and summary judgment should be granted .

### *Forfeiture of Property*

Rankin also seeks damages for the violation of his due process rights against all named Defendants for the improper forfeiture of his property. He seeks damages from Gaffney, Massey, Nicholson, and Loraine for improperly turning the property over to "federal authorities" for forfeiture, and from Meynardie, Gilbert, and Johnson for conducting improper administrative forfeiture proceedings. Mem. [56] 21. In sum, he claims that these individuals, in seeking and participating in administrative forfeiture proceedings, depraved him of his Fifth Amendment right to due process.

Only three *Bivens* causes of action have been recognized by federal courts*,* and Rankin's claim falls under none of them. *See Wilkie*, 551 U.S. at 549-50 (detailing the recognized Fourth, Fifth, and Eighth Amendment *Bivens* claims). Before fashioning a new *Bivens* remedy, this Court must follow the established two-step process by first asking, "whether any alternative, existing process for protecting the interest [of the plaintiff] amounts to a convincing reason for the Judicial branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 550. If no alterative exists, a court  must then look for special factors counseling hesitation in crafting the new cause of action. *Id.*

In *Bush v. Lucas,* the Supreme Court, finding "an elaborate remedial system that has been constructed step-by-step, with careful attention to conflicting policy considerations," refused to supplement the regulatory scheme with a judicially created *Buivens* remedy. 462 U.S. 367 (1983). Likewise in *Schweiker v. Chilicky*, the Court declined to augment a comprehensive statutory scheme-the Social Security Act-by implying a new *Bivens* remedy for wronged beneficiaries. 487 U.S. 412 (1988).  In these cases, the Court recognized that Congress had carefully considered all issues and policy concerns related to the regulated area and provided "adequate remedial mechanisms for constitutional violations that may occur in the course of [the program's] administration." *Id.* at 423. And if the scheme fails to provide a sufficient remedy, it is the result of Congress' deliberate and informed decision-making, a process that counsels against  judicial amendment. *Id.* at 424-5.

With CAFRA, Congress overhauled the civil forfeiture system, responding to a growing tide of criticism. *See* 106 CONG. REC. S1,759 (daily ed. March 27, 2000) (statement of Sen. Orrin Hatch)("While civil forfeiture is a valuable law enforcement tool, it has become increasing clear that some reform of forfeiture law is necessary given the numerous controversial seizures of property in the last decade.") CAFRA was intentionally crafted to re-balance the "ability to seize and forfeit assets that are truly used for criminal endeavors" with "civil liberties,"  106 CONG. REC. H2,054 (daily ed. April 11, 2000) (statement of Rep. Bob Barr),  in order to "achieve a piece of legislation that would provide enhanced protections to private property owners and at the same time would not undermine, in a real and significant and unnecessary way, the ability of law enforcement agencies to seize and forfeit . . . assets from illegal drug dealers and other criminal assets . . ."106 CONG. REC. S1,762. (daily ed. March 27, 2000) (statement of Sen. Jeff Sessions)

The comprehensive Drug Abuse Prevention and Control Act provides for the forfeiture of certain property used to facilitate narcotic transactions or acquired by the proceeds of such activity.

21 U.S.C. § 881. If the property is determined to be subject to forfeiture, *see* 19 U.S.C. § 1607, then government can initiate administrative forfeiture. The administrative process under CAFRA begins with notice. Within 60 days after seizure, the government must "send written notice to interested parties . . . in a manner to achieve proper notice as soon as practicable." 18 U.S.C. § 983(a)(1)(A)(I). Once proper notice is issued, any person may make a timely claim on the property, by stating, under oath, their interest in the property. § 983(a)(2)(A). Without proper notice, the property must be returned. § 983(a)(1)(F). If no claim is made, the property may be declared forfeited and an interested party's remedy is to file a "Motion to set aside forfeiture" within five years of the final publication of notice. § 983(e)(3).

If a claim is filed disputing the intended forfeiture, the forfeiture proceedings are immediately stopped and the case referred to the appropriate United States Attorney. From the time of the claim, the government has 90 days to file a civil forfeiture complaint to begin judicial forfeiture in a United States District Court, obtain a criminal forfeiture indictment, or return the property. § 983(a)(3)(A-B). If the action proceeds to judicial review in federal court, CAFRA now provides for appointment of counsel and has shifted the burden of proof to the government to establish by a preponderance of evidence that the property is subject to forfeiture. § 983(b-c). CAFRA also grants interested parties an "innocent owner defense" to those who had no knowledge of the illegal conduct or, when it was discovered, acted reasonably under the circumstances to cease use of the property. § 983(d). Once administrative forfeiture proceedings are complete, a district court may review only "whether the forfeiture comported with constitutional due process guarantees." *Kadonsky v. United States*, 216 F.3d 499, 506 (5th Cir. 2000).

It is clear that the area of administrative forfeiture "received careful attention from Congress" when it designed and passed CAFRA. Like the statutory schemes presented in *Bush* and *Chiliky,*

CAFRA presents "an elaborate remedial system that has been constructed step-by-step, with careful attention to policy considerations"; any augmentation of its remedial measures should be deferred to Congress, who is "in a far better position than a court to evaluate the impact of a new species of litigation."*Bush*, 462 U.S. at 388. Faced with a clear "alternative, existing process for protecting interests" in civil forfeiture actions that also counsels judicial hesitation, the Court finds that CAFRA is a convincing reason to refrain from providing the remedy requested by Rankin. *See, e.g., Lefler v. United States*, 2011 WL 2132827 * 2 (S.D. Cal. 2011) (Holding that CAFRA precludes a *Bivens* action for property allegedly seized and forfeited in violation of the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.) The Defendant's motion for summary judgment should be granted, and Rankin's Fifth Amendment *Bivens* claims dismissed.

## RECOMMENDATION

Based on the preceding analysis, the Court lacks jurisdiction over the Plaintiff's Federal Tort Claim Act causes of action and has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his *Bivens* claims against the Defendants. Therefore, this Court recommends that the Defendants' Motion [50] to Dismiss, or in the Alternative, for Summary Judgment should be granted.

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from

attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the   31st   day of January, 2011.

*s/ John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE
